IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 15, 2017 Session

## ESTATE OF KELLY JOE MORGAN LYNN v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission for the Western Division**
**No. T20140890      James A. Hamilton, III, Commissioner**

_____

### No. W2017-00806-COA-R3-CV
_____

Claimant estate appeals the dismissal of its claim against the State related to the failure of a State prison to provide medical care to an inmate. Following a trial, the Claims Commission dismissed the claim for lack of subject matter jurisdiction. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J. and, JOE G. RILEY, SP. J., joined.

Mary Clemons, Nashville, Tennessee, for the appellant, Jannie Mildred Lynn and Shelley Renae Lynn, on behalf of the Estate of Kelly Joe Morgan Lynn.

Herbert H. Slatery, III, Attorney General and Reporter; Andreé S. Blumstein, Solicitor General; Pamela S. Lorch, Senior Counsel, for the appellee, State of Tennessee.

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

**Background**

Decedent Kelly Joe Morgan Lynn ("Decedent") was an inmate in the custody of the Tennessee Department of Correction at Northwest Correctional Complex ("Northwest" or "the prison") from approximately 2011 to 2013. Shortly after his release from Northwest, Decedent died, allegedly from complications related to Hepatitis C. Jannie Mildred Lynn and Shelley Renae Lynn, on behalf of Claimant/Appellant Estate of Kelly Joe Morgan Lynn ("Claimant"), thereafter filed a claim and complaint in the Tennessee Division of Claims Administration against the State for negligence in failing to appropriately treat Decedent's illness while he was incarcerated. On April 15, 2014, the claim was transferred to the Tennessee Claims Commission ("Claims Commission").

On June 18, 2014, the State filed a motion to dismiss on the basis that no proper and timely good faith certificate was filed in connection with this action. The Commissioner eventually granted the motion in part, dismissing all claims arising out of negligent healthcare. The Claims Commissioner allowed the case to proceed as to any remaining claims not involving healthcare liability.[2] An amended complaint was filed, and the case proceeded to trial on August 30, 2016.

The evidence at trial showed that although Decedent was diagnosed with Hepatitis C while in prison as early as 2008, he was initially asymptomatic.[3] Following the diagnosis, Decedent was released from prison in August 2009 but returned after violating parole in 2011. Following his reincarceration, Decedent was housed at Northwest. In May 2011, Decedent underwent a medical assessment that showed that he was a candidate for Hepatitis C treatment. Although Decedent requested treatment in August 2011 and was ultimately placed on a list for treatment in September 2012, it was undisputed at trial that Decedent never received the treatment available for Hepatitis C that is at issue in this case.

Decedent was eligible for parole in February 2012 but parole was denied. Decedent was ultimately released from prison in July 2013. Following his release, Decedent was hospitalized due to alleged complications from end-stage liver cirrhosis. Decedent died on October 10, 2013. Decedent's treating physician following his release from incarceration, Kenny Lynn, M.D., testified by deposition that Decedent's death

---

[2] The Claims Commissioner's decision to partially grant the State's motion to dismiss on this issue has not been raised as an issue on appeal. As such, we express no opinion as to the propriety of the dismissal or whether the claims that were ultimately taken to trial should have likewise been dismissed as involving healthcare liability.

[3] According to Claimant's appellate brief, they do not take issue with the facts as found by the Claims Commissioner. Accordingly, many of the facts recited in this Opinion are taken from the Claims Commissioner's order.

resulted from end-stage liver cirrhosis, for which timely Hepatitis C treatment would have "improved the odds for long-term survival[.]"[4]

At trial, the deposition of Glen Babich, M.D. was also submitted as substantive evidence. At the time of the events at issue in this case, Dr. Babich worked as an associate regional medical director for Corizon, an independent contractor hired by the State to supply physicians to inmates housed in Tennessee prisons.[5] In March 2012, Dr. Babich worked in Northwest for three to five days as a fill-in physician. According to Dr. Babich, he did not examine Decedent but reviewed his medical file. Decedent's medical files indicated that Decedent was a possible candidate for Hepatitis C treatment as early as August 2011, but that, as of March 2012, Decedent had not yet been fully approved for treatment. Dr. Babich testified that treatment was not scheduled immediately following the determination of his candidacy because of the possibility that Decedent would be released on parole in February 2012. According to Dr. Babich, the possible release meant that Decedent "would not have sufficient time to take treatment."[6] Stopping treatment prior to completion has "a very, very poor success rate" and can result in a "worse outcome than if you waited." As such, it is not recommended to start treatment where the patient will be unable to complete it. Dr. Babich testified that Decedent fell into this category of patients prior to his examination of the medical file in March 2012.

Once his parole was denied, however, Dr. Babich completed paperwork and testing to place Decedent on an approved list for treatment.[7] The medical records indicate that Decedent was ultimately approved for treatment by the prison's medical staff on September 7, 2012. According to Dr. Babich, however, approval by the inmate's home prison's medical staff was not the final step prior to Decedent obtaining the treatment at issue in this case. Rather, Dr. Babich testified that many treatments, including the Interferon indicated to treat Decedent's Hepatitis C, were only administered at one Tennessee prison: Deberry Special Needs Facility in Nashville, Tennessee ("Deberry"). Transfers of patients to Deberry for this treatment were limited by the number of spaces available.[8] As such inmates are typically placed on a waiting list and only "called up" once a bed is available. Dr. Babich testified that the ultimate decision of whether to request a transfer of an inmate from a home prison to Deberry for Hepatitis C treatment

---

[4] Dr. Lynn is Decedent's relative.

[5] Dr. Babich could not recall whether all of the nurses in all prisons were also employed by Corizon at the time of the events at issue but stated that any actions taken by nursing staff were on the direction of Corizon physicians.

[6] Dr. Babich testified that the treatment required a minimum of six months of active treatment and approximately six months of follow-up, plus approximately three months of testing to determine if the patient is "really [a] candidate[] and [had] no contraindications." As such, Dr. Babich testified that full treatment required nine to eighteen months.

[7] Dr. Babich testified that at that time, Decedent was required to undergo mental health and blood testing before treatment could be recommended.

[8] According to Dr. Babich, only approximately ten beds are available at Deberry for the treatment at issue in this case.

was made by the physicians at Deberry, not the inmate's home prison, the regional medical director, nor the prison warden.[9] According to Dr. Babich, nowhere in Decedent's medical records is there an indication that a physician at Deberry ever approved a transfer of Decedent to Deberry for treatment of his Hepatitis C. Finally, Dr. Babich testified that the physicians making these decisions at Deberry during the relevant time were employees of Corizon, rather than the State.

Warden Henry Steward testified by deposition as well. In general, Warden Steward confirmed that he had no authority to transfer a patient to Deberry for treatment absent an order from a Deberry physician. Specifically, Warden Steward testified that in order to be transferred to Deberry, the warden of the prison where the inmate is currently housed must issue a "gate pass" allowing the inmate to move between prisons. According to Warden Steward, however, the warden does not issue a gate pass for an inmate to be transferred to Deberry unless a Deberry physician has made a decision that the inmate should be transferred for purposes of medical treatment.[10] Finally, Warden Steward detailed some specific Tennessee Department of Correction Policy documents that supported his testimony regarding the procedure used to transfer inmates to Deberry.

At the conclusion of Claimant's proof, the State moved to dismiss on the basis that Claimant failed to present any evidence of negligence.[11] The Claims Commissioner initially denied the motion, noting that some medical records had been presented that it had not had the chance to review. Following the conclusion of trial, however, the Commissioner issued an order of dismissal based upon the earlier motion to dismiss and the record as whole. The Commissioner found that while Decedent was diagnosed with Hepatitis C and met the eligibility requirements for treatment, the determination of whether Decedent would be transferred to a facility able to treat Decedent's illness rested solely with Corizon, a privately-owned contractor, based upon availability of beds at the treatment facility. The Commissioner further found that no Corizon contractor ever issued an order to transport Decedent to the treatment facility. Thus, any negligence in

---

[9] Other than availability of beds for treatment, Dr. Babich further testified that an inmate's refusal to take part in testing might cause Deberry physicians to refuse to advance a patient on the waiting list; Dr. Babich testified that while Decedent's medical records indicated that Decedent expressed a desire for treatment as early as 2011, in January 2013, Decedent refused medical testing "that would have been necessary for him to continue on treatment."

[10] Warden Steward testified that the same process applied when an inmate requested early release for medical reasons: the determination of whether the inmate was eligible for early release was made by medical staff.

[11] Although the State cited Rule 50 of the Tennessee Rules of Civil Procedure regarding directed verdicts, this Court has repeatedly held that directed verdicts have no place in bench trials. *See Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) ("[M]otions for directed verdicts have no place in bench trials, while Tenn. R. Civ. P. 41.02(2) motions have no place in jury trials."). As such, the proper motion was for involuntary dismissal under Rule 41.02 of the Tennessee Rules of Civil Procedure. *Id.* at 522 (applying the standard under Rule 41.02 rather than the standard under Rule 50).

failing to treat Decedent was attributed not to the State but to a private contractor. The Commissioner therefore ruled that it lacked jurisdiction "to determine any matter concerning the medical care or services rendered to [Decedent] by Corizon employees." The Commissioner also ruled that no negligence had been shown to be committed by the prison warden, and no private right of action was conferred by Tenn. Code Ann. § 9-8-307(a)(1)(N).[12]

Claimant thereafter filed a motion for an en ban hearing before the Claims Commission. On April 6, 2016, the motion for an en banc hearing was denied. Claimant now appeals to this Court.

## Issues Presented

Claimant raises two issues, which are taken from its brief:

1. Whether the Claims Commissioner erred in ordering the dismissal of the Claim and denying an en banc review of the Claims Commissioner's order.
2. Whether the law in Tennessee confers a private right of action in favor of Claimant against the State.

## Standard of Review

Here, the Claims Commissions granted the State's motion for involuntary dismissal under Rule 41.02 of the Tennessee Rules of Civil Procedure. Proceedings before the Claims Commission are generally governed by the Tennessee Rules of Civil Procedure. Tenn. Code Ann. § 9-8-403(a)(1) ("These proceedings shall be conducted pursuant to the Tennessee Rules of Civil Procedure where applicable and otherwise pursuant to rules and regulations promulgated by the commission."). Appeals to this Court are likewise governed by the Tennessee Rules of Appellate Procedure. *Id.* ("The decisions of the individual commissioners or, when rendered, decisions of the entire commission regarding claims on the regular docket may be appealed to the Tennessee court of appeals pursuant to the same rules of appellate procedure which govern interlocutory appeals and appeals from final judgments in trial court civil actions[.]").

Because the Claims Commissioner's ruling resulted in dismissal of the claim, Claimant asserts that this Court must consider this case under the rather stringent standard applicable to motions to dismiss under Rule 12.02 of the Tennessee Rules of Procedure. In reviewing the grant of motion for involuntary dismissal, however the applicable standard is as follows:

---

[12] The Commissioner also found that it lacked jurisdiction over any claims related to the United States Constitution, as discussed *infra*.

- 5 -

When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case [under Rule 41.02], the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented. *See City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn.1977). If a plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if the plaintiff has shown no right to relief on the facts found and the applicable law. *Id.*; *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn.Ct.App.1991). The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Atkins*, 823 S.W.2d at 552.

*Building Materials Corporation v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007). The standard of review applicable to involuntary dismissals is therefore identical to the standard applicable in appeals from bench trials. *See* Tenn. R. App. P. 13(d) (distinguishing the standard applicable where a jury is empaneled versus where the trial court acts as fact-finder). Thus, we apply the Rule 13(d) standard regardless of whether the Claims Commissioner's decision is construed as granting a motion for involuntary dismissal or simply as a dismissal following a bench trial. Consequently, we review the trial court's findings of fact de novo with a presumption of correctness. *Id.* The trial court's legal conclusions, however, are afforded no such deference. *Id.* Questions of subject matter jurisdiction are issues of law that are reviewed de novo. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn.1999).

## Discussion

A brief discussion of the history and subject matter jurisdiction of the Claims Commission is helpful in this case. As the Tennessee Supreme Court explained:

Pursuant to its constitutional power to provide for suits against the state, the legislature created the Tennessee Claims Commission in 1984 to hear and adjudicate certain monetary claims against the State of Tennessee. *See* Tenn. Code Ann. §§ 9-8-301 to 307 (1999). While the Claims Commission has exclusive jurisdiction to hear claims arising against the state, *cf.* Tenn. Code Ann. § 20-13-102(a) (1994), this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a). If a claim falls outside of the categories specified in section 9-8-307(a), then the state retains its immunity from suit, and a claimant may not seek relief from the state. *Cf. Hill v. Beeler*, 199 Tenn. 325, 329, 286 S.W.2d 868, 869 (1956) (stating that "except as the Legislature of the State consents there is no jurisdiction in this Board of Claims to entertain suits against the State").

***Steward v. State***, 33 S.W.3d 785, 790–91 (Tenn. 2000) (footnote omitted). Section 9-8-307 provides, in relevant part:

> The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101, falling within one (1) or more of the following categories:
>
> \* \* \*
>
> (E) Negligent care, custody and control of persons; . . . .

Tenn. Code Ann. § 9-8-307(a)(1). The Tennessee Supreme Court has previously recognized that section 9-8-307(a)(1)(E) may apply to "injuries to persons confined in penal institutions, residences, or health facilities maintained by the state." ***Steward***, 33 S.W.3d at 792 (citing ***Learue by Learue v. State***, 757 S.W.2d 3, 5 (Tenn. Ct. App. 1987)). As such, Claimant argues that the State's negligence in failing to provide medical treatment is a cognizable claim under section 9-8-307(a)(1)(E).

In contrast, the State asserts that Claimant failed to present proof that any "state employees" committed negligence in this case, as required by the plain language of section 9-8-307(a)(1). According to the State, all of the alleged negligence in this case was committed not by state employees but by the employees of an independent contractor. As such, the State contends that the trial court correctly found that no evidence had been presented that the negligence of a state employee caused Decedent's alleged injuries, as required to impose liability in the Claims Commission.

The term "state employee" is defined by Tennessee Code Annotated section 8-42-101 as, *inter alia*, "any person who is employed in the service of and whose compensation is payable by the state, or any person who is employed by the state whose compensation is paid in whole or in part from federal funds[.]" Tenn. Code Ann. § 8-42-101(3)(A). The statute makes clear, however, that the definition "does not include any person employed on a contractual or percentage basis." ***Id.*** (noting some exceptions not applicable in this case). As such, this Court has previously held that the negligence of independent contractors employed by the State is not a cognizable claim in the Claims Commission. *See generally* ***Martin v. State***, No. M1999-01642-COA-R3-CV, 2001 WL 747640, at \*1–\*3 (Tenn. Ct. App. July 5, 2001) (holding that the Claims Commission correctly declined to exercise jurisdiction over the claim where it was undisputed that the alleged negligence was committed by independent contractors rather than state employees). Thus, where the only negligence was the negligence of an independent contractor or its employees, the Claims Commission must dismiss the claim as outside its subject matter jurisdiction.

A highly analogous situation occurred in *Younger v. State*, 205 S.W.3d 494 (Tenn. Ct. App. 2006). In *Younger*, the plaintiff alleged that he was negligently treated by medical staff while an inmate in a Tennessee prison. *Id.* at 495. As such, the plaintiff filed a claim against the State in the Claims Commission. The State denied, however, that any of the allegedly negligent medical treatment was provided by state employees, as required to confer subject matter jurisdiction on the Claims Commission. The Claims Commission later granted summary judgment in favor of the State on this issue. *Id.* at 497.

In affirming the judgment of the Claims Commission, this Court first noted that there was no dispute that the medical treatment at issue had been provided by independent contractors, as allowed by Tennessee law. *Id.* at 498–99 (citing Tenn. Code Ann. § 41-24-101, *et seq.* (allowing the State to employ independent contractors to perform prison functions with certain limitations)). Because the negligence had not been committed by state employees, we held that the Claims Commission lacked jurisdiction to adjudicate the claim. Under these circumstances, we explained that "the proper defendant for negligence claims arising from the action of private contractors, or their employees, in operating correctional facilities is the contractor, and not the State." *Id.* at 499. As such, the Claims Commissioner's dismissal of the action was affirmed. *Id.*

The same is true in this case. Here, the evidence presented at trial and found by the Claims Commissioner was that the decision as to whether an inmate would be transferred to the treatment facility lay solely with Deberry physicians, who are undisputedly the employees of an independent contractor. Although Claimant asserts in its brief that the warden was the person authorized to "approve [Decedent] for a gate pass" to the treatment facility, Warden Steward testified at trial that a gate pass authorizing the transfer of an inmate to the treatment facility could only be issued after a physician made a decision that an inmate should be transferred for purposes of medical treatment. Dr. Babich likewise testified that the ultimate decision of whether an inmate would be transferred to treatment at Deberry was made by Deberry's physicians, who were not State employees. Thus, all of the decisions regarding treatment were made by physicians rather than prison staff such as the warden. These physicians, whether at Decedent's home prison, Northwest, or Deberry were employed by Corizon, rather than the State.[13] Finally, we note that prison policy documents contained in the record support the testimony of both Dr. Babich and Warden Steward, as these documents state that the Deberry medical director has "authority over admissions and discharges to [Deberry]." Tenn. Dep't Corr. Policy 113.12(VI)(A)(2). Thus, without the approval of the Deberry contractor physicians, no transfer for the purposes of medical treatment could be

---

[13] The Claims Commissioner specifically found that the physicians at Northwest transmitted Decedent's medical information to physicians at Deberry "so that he might be placed on the list of candidates seeking treatment." As previously discussed, Claimant does not take issue with the Claims Commission's findings of fact.

authorized. In sum, the failure to authorize treatment in this case, the allegedly negligent conduct at issue, was committed not by State employees but by the employees of an independent contractor. As such, like in *Younger*, we must conclude that the Claims Commission properly dismissed Claimant's action regarding the allegedly negligent medical care for lack of jurisdiction.

Claimant contends, however, that the Claims Commission retained jurisdiction pursuant to another provision of section 9-8-307(a)(1), which provides that the Claims Commission has jurisdiction to consider claims against the State related to the "[n]egligent deprivation of statutory rights created under Tennessee law[.]" Tenn. Code Ann. § 9-8-307(a)(1)(N). In support, Claimant asserts that the actions of the State in this case violated Tennessee Code Annotated section 41-1-104, which provides as follows: "The custody, welfare, conduct and safekeeping of the inmates shall be the responsibility of the warden, who will examine into the affairs of the institution daily to assure that proper standards are maintained." Tenn. Code Ann. § 41-1-104(b). In support, Claimant points to prison policies effective at the time of the events in this case requiring wardens to transfer ill inmates for medical treatment or release the inmates. Thus, Claimant contends that the warden, an undisputed State employee, violated this policy, thereby conferring subject matter jurisdiction on the Claims Commission.

Respectfully, we cannot agree. In order to prevail on this type of claim, "[t]he claimant must prove under this subdivision (a)(1)(N) that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions." *Id.* Where a statute does not expressly provide a private right of action, the Claims Commission lacks subject matter jurisdiction to entertain a claim involving the negligent deprivation of that right. *See Brown v. State*, 333 S.W.3d 102, 106 (Tenn. Ct. App. 2010) (affirming the dismissal of a claim for lack of subject matter jurisdiction where the statute did not expressly confer a private right of action). Claimant directs this Court to no language in section 41-1-104 or its related statutes that expressly confers a private right of action for the alleged violation of section 41-1-104(b). While Claimant asserts that "it is repugnant to suggest that the State [] does not have or has not created a private right of action against denying an inmate necessary and vital medical treatment," we simply cannot infer a private right of action where none was expressly provided for by the Tennessee General Assembly. As such, the Claims Commission did not err in dismissing any claim arising from sections 9-8-307(a)(1)(N) and 41-1-104(b) for lack of subject matter jurisdiction.

Claimant also asserts that the provision of medical care was a non-delegable duty required of the State in the context of prisons under the Eight Amendment of the United States Constitution, citing federal law. *See West v. Atkins*, 487 U.S. 42, 56, 108 S. Ct. 2250, 2259, 101 L. Ed. 2d 40 (U.S. 1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their

Eighth Amendment rights."). As an initial matter, we note that no Eighth Amendment claim was raised in Claimant's initial claim or amended claim. Instead, it appears that this claim was raised for the first time in Claimant's proposed findings of fact and conclusions of law, which was filed following the hearing in this case and the conclusion of the proof.[14] Additionally, Claimant's Eight Amendment argument, was not included in any fashion in Claimant's brief to this Court but was raised to this Court for the first time at oral argument.

The Tennessee Supreme Court has stated: "We are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001) (involving a constitutional question). Likewise issues may be waived where the appellant's brief fails to include an argument on the issue satisfying the rules of appellate procedure. *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). This maxim holds true even of arguments involving the constitutionality of statutes or conduct. *See Adoption of E.N.R.*, 42 S.W.3d at 32 (involving an attack to the constitutionality of a statute); *State v. Bane*, 853 S.W.2d 483, 488 (Tenn. 1993) ("[D]efendant's failure to raise the issues asserted on appeal as unconstitutional amounts to a waiver of those issues for the purposes of appellate review[.]"); *State v. Davis*, No. 03C01-9712-CR-00543, 1999 WL 135054, at *13 (Tenn. Crim. App. Mar. 15, 1999) (holding that the defendant's argument that his Eighth Amendment rights were violated was waived where the defendant failed to properly brief the argument).[15]

---

[14] The entirety of the argument contained in Claimant's proposed findings of fact and conclusions of law regarding the Eighth Amendment is as follows:

> The Federal and State Courts have consistently held that the government has an obligation born of the U.S. Const. amend[.] VIII to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs. If the authorities fail to do so, those needs will not be met. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 ([] 1976 []). This claim sounds in negligence. . . .

*But see Estelle*, 429 U.S. at 105–06 (holding that "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind'" as required to make out an Eighth Amendment claim). The State responded to Claimant's Eighth Amendment argument by contending that the Claims Commission lacked jurisdiction over a claim involving the violation of the United States Constitution, discussed *infra*.

[15] Rather than raise an argument concerning the Eighth Amendment of the United States Constitution, Claimant's brief cites only Article I, section 8 of the Tennessee Constitution and the Tennessee Human Rights Act. From our review of the record on appeal, neither of these authorities was cited before the Claims Commission. Moreover, the argument contained in Claimant's brief concerning these authorities is no more than skeletal. These arguments are therefore waived. *See Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). Claimant also argues in the statement of issues section of its brief that the Claims Commission

Despite the eleventh-hour introduction of this argument, the Claims Commission did rule on the argument, finding that it had no jurisdiction over a constitutional claim. *See* **Shell v. State**, 893 S.W.2d 416, 419–20 (Tenn. 1995) (citing **Daniels v. Williams**, 474 U.S. 327, 334 (1986)) (holding that the Tennessee General Assembly's amendment to Tennessee Code Annotated § 9-8-307(a)(1)(N), enacted in light of the **Daniels** decision, removed any cause of action before the Claims Commission for negligent deprivation of a constitutional right); **Womble v. State**, No. E2012-01711-COA-R3-CV, 2013 WL 3421925, at *8 (Tenn. Ct. App. July 3, 2013) ("[T]he Commission's jurisdiction over claims arising from negligent acts of state actors does not extend to acts that allegedly deprive the claimant of a constitutional right."). Although Claimant submitted supplemental authorities to this Court following oral argument regarding its contention that the Eighth Amendment was violated in this case, Claimant has failed to offer any argument or authorities regarding the Claims Commissioner's ruling that it lacked subject matter jurisdiction to address the merits of this type of claim. We therefore conclude that any argument that the Claims Commission erred in not finding in favor of Claimant with regard to the alleged violation of the Eighth Amendment is waived by the failure to properly brief this argument.

In conclusion, the evidence presented at trial does not preponderate against the Claims Commissioner's finding that Claimant presented no evidence to establish that Decedent suffered injuries as the result of negligence committed by State employees. Rather, it appears that the alleged negligence at issue in this case is attributable to the employees of an independent contractor. Like in **Younger**, the proper defendant was therefore "the contractor, and not the State." **Younger**, 205 S.W.3d at 499. Likewise, Claimant failed to show that the Claims Commission erred in dismissing for lack of subject matter jurisdiction any claims arising from the negligent deprivation of a statutory right or the United States Constitution. All other arguments not raised before the Claims Commissioner and/or raised in no more than a conclusory fashion on appeal are waived. Consequently, the Claims Commissioner's decision is affirmed.

## Conclusion

The judgment of the Tennessee Claims Commission is affirmed, and this cause is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant, Estate of Kelly Joe Morgan Lynn, and its surety.

---

erred in denying its request for an en banc hearing. This issue is not argued in the body of Claimant's brief. It is therefore likewise waived. *See* **Bean v. Bean**, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) ("[A]n issue is waived where it is simply raised without any argument regarding its merits.").

_____
J. STEVEN STAFFORD, JUDGE